UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ANDREW BOTTARI,                                    Docket No.:
                                                   **07-cv-08192 (CLB)**

                    Plaintiff,

        -against-

DAVID FISCHER and MICHAEL STEVENSON,
Employees of the Village of Ardsley Police
Department,

                    Defendants.

--------------------------------------------------------------X

# MEMORANDUM OF LAW

Submitted on behalf of the Defendants
**DAVID FISCHER and MICHAEL STEVENSON**

**By their attorneys**

**HODGES WALSH & SLATER, LLP**
**55 Church Street, Suite 211**
**White Plains, New York 10601**

## Preliminary Statement

Assuming plaintiff has pled a cognizable claim, qualified immunity shields government officials performing discretionary functions from liability under 42 U.S.C. § 1983 for civil damages insofar as (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996).

Plaintiff, ANDREW BOTTARI alleges violations of his federal and state constitutional rights, including a violation of his right to be free from false arrest (Exhibit A, par. 27); unreasonable force during a seizure (Exhibit A, par. 33); and malicious prosecution (Exhibit A, par. 39-41).

Based upon the facts and circumstances known to the police officers, it is respectfully submitted that it was objective reasonable for them to seize Mr. Bottari during their investigation of his suspicious presence in a vacant commercial parking lot at 12 midnight when, against their express direction of their concern for safety, he took his hands out of his pockets holding unconfirmed items that the police could reasonably believe posed a risk of danger.

## Statement of Facts

On March 3, 2005, around midnight, plaintiff left his home and drove to the parking lot of a local commercial strip mall. He parked near an entrance to the CVS Pharmacy with the rear of his SUV closest to the building. He exited his vehicle and opened the rear hatch door. He saw a police patrol car drive by. Less than a minute later, while he was walking towards the front of his vehicle, Police Officer Stevenson

approached in a patrol car. Plaintiff was still out of his vehicle when he had his first contact with Officer Stevenson.

Officer Stevenson asked what he was doing. Plaintiff was evasive. Twice, he said "I am not doing anything." Once, "I'm just here." Subsequently, upon being asked a fourth time, he said "I am listening to music." Officer Stevenson called for back-up.

Plaintiff then summarily told Officer Stevenson he was leaving. Even though Officer Stevenson told him not to leave, plaintiff opened his car door.

Officer Stevenson placed his police vehicle to block plaintiff's vehicle. Officer Stevenson exited the patrol car, and Sergeant Fischer arrived 1 to 2 minutes later.

Plaintiff put both of his hands into the pockets of his coat.

Officer Stevenson told plaintiff to "Get your hands out of your pockets ... [f]or safety reasons."

Plaintiff did not take immediately withdraw his hands from his pocket. Even though the police did not ask plaintiff to take anything out of his pockets, plaintiff took his hands out, alleging holding a cell phone and wallet, and brought them up to shoulder height, with elbows bent, facing the police.

Seconds later the police officers grabbed him by the arms and shoulders. Another second later, all three were on the ground.

## DEFENDANTS ARE ENTITLED
## TO A QUALIFIED IMMUNITY DEFENSE
## ON PLAINTIFF'S CLAIM OF FALSE ARREST

Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not

otherwise privileged. Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995).

Assuming for the purpose of this motion that plaintiff has properly pled his claim, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest whether that action is brought under state law or § 1983." Weyant, 101 F.3d at 852 (quotation omitted); Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995)("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

The probable cause inquiry is objective rather than subjective. Devenpeck v. Alford, 543 U.S. 146, 152-3 (2004).

Probable cause to arrest exists when the officers, based upon the facts available to the officer at the time, have reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. Jenkins v. City of New York, 478 F.3d 76, 85 (2d Cir. 2007); Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).

As the Supreme Court held in Devenback, a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, the Court's focus is on the validity of the arrest, and not on the validity of each charge. Jaegly, 439 F.3d at 154.

Examining the totality of the circumstances, it is respectfully submitted that probable cause existed to arrest plaintiff for the crimes of Disorderly Conduct and/or

Obstructing Governmental Administration.

The New York statute for Disorderly Conduct provides:

> A person is guilty of disorderly conduct when, with intent
> to cause public inconvenience, annoyance or alarm, or
> recklessly creating a risk thereof: (1) He engages in
> fighting or in violent, tumultuous or threatening behavior;
> or ... (7) He creates a hazardous or physically offensive
> condition by any act which serves no legitimate purpose.

NY Penal Law §240.20(1).

The New York statute for Obstructing Governmental Administration provides:

> A person is guilty of obstructing governmental
> administration when he intentionally obstructs, impairs or
> perverts the administration of law or other governmental
> function or prevents or attempts to prevent a public servant
> from performing an official function, by means of
> intimidation, physical force or interference ....

NY Penal Law §195.05.

The New York statute for Resisting Arrest provides:

> A person is guilty of resisting arrest when he intentionally
> prevents or attempts to prevent a police officer or peace
> officer from effecting an authorized arrest of himself or
> another person.

NY Penal Law § 205.30

Here, the police encountered plaintiff in a vacant commercial parking lot at 12

midnight. Upon initial investigation, and inquiry why he was there, plaintiff was evasive.

> Q: What were the first words he said to you?
> A: He asked what I was doing there?
> Q: Did you respond?
> A: Yes.
> Q: What did you say?
> A: I said "I am not doing anything."
> Q: What did he say then?

> A: He said "what are you doing here?" I responded, "I am not doing
> anything. I am just here." Then he asked again and I said, "I am listening
> to music."

(Exhibit C, p. 28).

Plaintiff, an attorney and former prosecutor, surely was aware of the ramifications
of his actions. Instead of complying fully with the directives of the police officers, his
behavior gave the police further concern for their safety and frustrated their investigation.

He summarily announced he was leaving. Even though Officer Stevenson told
him not to leave, plaintiff opened his car door. The police had to react to block his exit.

Plaintiff put both of his hands into the pockets of his coat.

Police Officer Stevenson told plaintiff to take his hands out of his pockets because
of their concern for safety.

Plaintiff did not take immediately withdraw his hands from his pocket. Even
though the police did not ask plaintiff to take anything out of his pockets, plaintiff took
his hands out, holding two objects, and brought them up to shoulder height, with elbows
bent, facing the police.

Even if, as he alleges, he told the police that the objects in his pockets were a cell
phone and wallet, his action in taking them out of his pockets, after being told of the
officer's safety concerns, was an overt physically threatening action, which justified the
police action to seize the plaintiff and prevent the substantial and immediate risk of
serious physical injury.

Based upon the facts and circumstances known to the police officers, it is
respectfully submitted that it was objective reasonable for them to seize Mr. Bottari
during their investigation of his suspicious presence in a vacant commercial parking lot at
12 midnight when, against their express direction, he attempted to leave and, despite their

concern for safety, he took his hands out of his pockets holding unconfirmed items that the police could reasonably believe posed a risk of danger to the officers.

As such, it is respectfully submitted that their arrest of the plaintiff was objectively reasonable.

### DEFENDANTS ARE ENTITLED
### TO A QUALIFIED IMMUNITY DEFENSE
### ON PLAINTIFF'S CLAIM OF EXCESSIVE FORCE

Claims of excessive force arising in the context of an arrest are analyzed under the Fourth Amendment's objective reasonableness test, paying "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 394-6 (1989).

The reasonableness of an officer's use of force must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396.

If the police officers' actions were objectively reasonable at the time, they are entitled to a qualified immunity. See e.g., Kerman v. City of New York, 261 F.3d 227, 239 (2d Cir. 2001).

Here, the police told plaintiff to simply take his hands out of his pockets because they were concerned for their safety. Instead of doing so, he took out his hands while holding two unconfirmed objects.

It is respectfully submitted that it was objectively reasonable for the police, in the middle of the night in a vacant commercial parking lot, having told a suspect just to take

his hands out of his pockets, to exercise the minimal force necessary to guard their safety when the suspect violated their directive and confronted them with unconfirmed objects in both hands.

As the Supreme Court aptly stated, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain and rapidly evolving, about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-7.

As such, it is respectfully submitted that their use of force was objectively reasonable to prevent the substantial and immediate risk of serious physical injury.

## DEFENDANTS ARE ENTITLED
## TO A QUALIFIED IMMUNITY DEFENSE
## ON PLAINTIFF'S CLAIM OF MALICIOUS PROSECUTION

To state a cause of action for malicious prosecution under Section 1983 appellant must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir, 2003)(internal quotation omitted).

Assuming for the purpose of this motion that plaintiff has properly pled his claim, and as discussed above relative to plaintiff's false arrest claim, the existence of probable cause is an absolute defense to a cause of action for malicious prosecution. Raymond v. Bunch, 136 F.Supp.2d 71, 80 (N.D.N.Y. 2001); Weyant, 101 F.3d at 857-8 (existence of probable cause establishes an absence of malice).

Here, there is no evidence that the police had any prior incidents with plaintiff or

that their actions were motivated by actual malice.

The police told plaintiff to take his hands out of his pockets because they were concerned for their safety. Instead of doing so, he took out his hands while holding two objects. Even if he told the police that the items were a cell phone and wallet, his action to take the objects out of his pockets, after what he was told, was an overt physically threatening action, which justified the police action to seize the plaintiff; and report their findings to the district attorney for prosecution.

As such, it is respectfully submitted that their actions did not constitute malicious prosecution.

Dated: White Plains, New York
       January 28, 2008

                        Respectfully submitted,
                        HODGES WALSH & SLATER, LLP


                        _____
                        Paul E. Svensson (PS3403)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ANDREW BOTTARI,

             Plaintiff,

     -against-

DAVID FISCHER and MICHAEL STEVENSON,
Employees of the Village of Ardsley Police
Department,

             Defendants.

-------------------------------------------------------------------X

Docket No.:
**07-cv-08192 (CLB)**

**NOTICE OF MOTION**

RETURN DATE:

FEBRUARY 29, 2008

    **PLEASE TAKE NOTICE**, that upon the annexed Affirmation of Paul E. Svensson, Esq., and upon all pleadings and proceedings had heretofore herein, the undersigned will move this Court on February 29, 2008 at 9:00 a.m., or as soon thereafter as movant will be heard, before the Hon. Charles L. Brieant at the United States District Court, 300 Quarropas Street, White Plains, New York, for an order pursuant to Fed. R. Civ. P. 56 (c) granting defendants, DAVID FISCHER and MICHAEL STEVENSON, (hereinafter "Defendants"), judgment on the affirmative defense of qualified immunity dismissing plaintiff's Complaint against these defendants, together with such further and other relief as the Court may deem just and fair under the circumstances herein.

Dated: White Plains, New York
      January 28, 2008

                   Yours, etc.,
                   Hodges, Walsh & Slater, LLP

                   *Paul E. Svensson*

                   Paul E. Svensson, Esq. (PS 3403)
                   Attorneys for Defendants

55 Church Street, Suite 211
White Plains, New York 10601
Tel: (914) 385-6000
Fax: (914) 385-6060
E-mail: psvensson@hwslaw.com

To:
Matthew Flamm, Esq.
Attorney for Plaintiff
26 Court Street, Suite 600
Brooklyn, New York 11242

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ANDREW BOTTARI,

Plaintiff,

-against-

DAVID FISCHER and MICHAEL STEVENSON,
Employees of the Village of Ardsley Police
Department,

Defendants.

-------------------------------------------------------------------X

Docket No.:
**07-cv-08192 (CLB)**

**AFFIRMATION
IN SUPPORT**

Paul E. Svensson, being an attorney duly admitted to practice law before the

United States District Court, Southern District of New York, affirms the following under

the penalties of perjury:

    1.    I am a member of the law firm of HODGES, WALSH & SLATER, LLP,

attorneys for the defendants, DAVID FISCHER and MICHAEL STEVENSON, and am

familiar with the facts and pleadings herein from my review of the file maintained by our

office.

    2.    This Affirmation is submitted in support of the defendants', DAVID

FISCHER and MICHAEL STEVENSON, motion for judgment pursuant to Fed. R. Civ.

P. 56 (c) on the affirmative defense of qualified immunity.

    3.    The plaintiff, ANDREW BOTTARI, commenced this action by service of

a Complaint, annexed hereto as **EXHIBIT A**, alleging a violation of federal and state

constitutional rights and seeking declaratory, compensatory and punitive damages.

Specifically, plaintiff alleges a violation of his right to be free from false arrest (Exhibit

A, par. 27); unreasonable force during a seizure (Exhibit A, par. 33); and malicious prosecution (Exhibit A, par. 39-41).

    4.      Defendants, DAVID FISCHER and MICHAEL STEVENSON, joined by a Verified Answer, annexed hereto as **EXHIBIT B**, and set forth the affirmative defense of qualified immunity. (Exhibit B, par. 21).

    5.      Plaintiff, ANDREW BOTTARI, was presented for deposition testimony on January 7, 2008. A copy of the referenced portions of the deposition transcript is annexed hereto as **EXHIBIT C**.

    6.      Pursuant to Local Rule 56.1, the Court is respectfully referred to defendants' Statement of Facts.

    7.      The Court is also respectfully referred to defendants' Memorandum of Law for the application of the facts on the well-established legal foundations for an affirmative defense of qualified immunity.

    WHEREFORE, it is respectfully requested that the defendants', DAVID FISCHER and MICHAEL STEVENSON, motion for judgment, pursuant to Rule 56(c), on the affirmative defense of qualified immunity be granted in its entirety and plaintiff's Complaint dismissed with prejudice, together with such further and other relief as this Court may deem just.

Dated: White Plains, New York
      January 28, 2008

                    Respectfully submitted,
                    HODGES WALSH & SLATER, LLP

                    *Paul E. Svensson*

                    Paul E. Svensson (PS3403)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANDREW BOTTARI,                              Docket No.:
                                             07-cv-08192 (CLB)
                    Plaintiff,

      -against-
                                             **STATEMENT
                                             OF FACTS**

DAVID FISCHER and MICHAEL STEVENSON,
Employees of the Village of Ardsley Police
Department,

                    Defendants.
-----------------------------------------------------------------X

      Defendants, DAVID FISCHER and MICHAEL STEVENSON, by their attorneys,

HODGES, WALSH & SLATER, LLP hereby sets forth their Rule 56.1 Statement of

Facts.

      This motion for qualified immunity is made in accordance with the Scheduling

Order issued by this Court on December 7, 2007. Under the Court's Order, plaintiff's

version of the facts is assumed true for the purposes of the motion.

      1.     On March 3, 2005, around midnight, plaintiff left his home and drove to

the parking lot of a local strip mall. (Exhibit A, par. 10; Exhibit C, p. 15-7).

      2.     He parked near an entrance to a closed CVS Pharmacy with the rear of his

SUV closest to the building. (Exhibit C, p. 21).

      3.     He exited the vehicle and opened the rear hatch door. (Exhibit C, p. 23).

      4.     He saw a police patrol car drive past the otherwise vacant shopping center.

(Exhibit C, p. 23).

      5.     He began walking towards the front of his vehicle, and Police Officer

Stevenson returned in the patrol car about a minute later. (Exhibit C, p. 23-5).

6.    Plaintiff had been out of his SUV for 30-60 seconds before Officer

Stevenson arrived. (Exhibit C, p. 26).

7.    Plaintiff was still out of his vehicle when he had his first contact with

Officer Stevenson, who was in his patrol car. (Exhibit C, p. 27-8).

8.    Officer Stevenson investigated.

> Q: What were the first words he said to you?
> A: He asked what I was doing there?
> Q: Did you respond?
> A: Yes.
> Q: What did you say?
> A: I said "I am not doing anything."
> Q: What did he say then?
> A: He said "what are you doing here?" I responded, "I am not doing anything. I am just here." Then he asked again and I said, "I am listening to music."

(Exhibit C, p. 28).

9.    Plaintiff saw Officer Stevenson using the radio in his vehicle. (Exhibit C,

p. 29-30).

10.    Plaintiff told Officer Stevenson he was leaving.

> Q: What else was said while he was still in his vehicle?
> A: I said, "I am going to go home. I am going to leave."

(Exhibit C, p. 30).

> Q: And did he respond?
> A: Yes.
> Q: What did he say?
> A: He said, "No, you are not."

(Exhibit C, p. 31).

11.    Plaintiff opened his car door. (Exhibit C, p. 34-5).

12.    Officer Stevenson placed his police vehicle to block plaintiff's vehicle.

> Q: What else was said before he got out of his vehicle?
> A: I said, "What are you doing?"
> Q: Did he respond?
> A: No. He just pulled up his car up in front of my car blocking my vehicle in.

(Exhibit C, p. 31).

13.     Officer Stevenson exited his vehicle, and 1 to 2 minutes later Sergeant

Fischer arrived. (Exhibit C, p. 32-3).

14.     As the police officers stood to his left and right, Officer Stevenson spoke:

Q: What did Officer Stevenson Say?
A: He said, "Get your hands out of your pockets."
Q: What did you say?
A: I asked him why.
Q: What did he say?
A: He responded, "For safety reasons."
Q: Did you take your hands out of you pockets?
A: Not immediately.

(Exhibit C, p. 40).

15.     Plaintiff did not take his hands out of his pockets and continued to talk.

Q: What did you say?
A: I said, "I have my phone in one pocket and my wallet in the other."

(Exhibit C, p. 41).

16.     The police did not ask plaintiff to take anything out of his pockets.

(Exhibit C, p. 41).

17.     Even so, plaintiff took his hands out, holding his cell phone and

wallet at shoulder height with elbows bent, facing the officers. (Exhibit C, p. 41, 43).

18.     Less than 5 seconds later the police officers grabbed him by the arms and
shoulders. (Exhibit C, p. 42-5).

19.     A second or two later, all of them were on the ground. (Exhibit C, p. 45).

20.     Plaintiff did not inform the police officers that he was an attorney and

former Assistant District Attorney until they fell to the ground. (Exhibit C, p. 51).

21.     Plaintiff was charged with Disorderly Conduct, Resisting Arrest and

Obstruction of Governmental Administration, and the matter was dismissed due to the

District Attorney's failure to timely prosecute. (See **EXHIBIT D**).

Dated: White Plains, New York
       January 28, 2008

Respectfully submitted,
HODGES WALSH & SLATER, LLP

*Paul E. Svensson*

Paul E. Svensson (PS3403)

# 07 CIV 8192

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

ANDREW BOTTARI,

                        Plaintiff,

        - against -

DAVID FISHER and MICHAEL STEVENSON,
employees of the Village of Ardsley Police
Department,

                        Defendants.

------------------------------------------------------x

## JUDGE BRIEANT

COMPLAINT



SEP 18 2007

Jury Trial Demanded
CASHIERED

        Andrew Bottari, by his attorney, Matthew Flamm, alleges the following,
upon information and belief, as his Complaint:

## Nature of the Action

        1.      This civil rights action arises from the defendants' unlawful arrest,
use of force and prosecution of Andrew Bottari beginning on March 3, 2005.
Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2201, and, under 42 U.S.C.
§1983, compensatory and punitive damages for violation of his civil rights.

## Jurisdiction and Venue

        2.      This action arises under the Fourth and Fourteenth Amendments to
the United States Constitution and 42 U.S.C. §1983. This Court has subject matter
jurisdiction pursuant to 28 U.S.C. §1331 and §1343(3). Plaintiff requests that this
Court exercise pendent jurisdiction over claims for violating his rights under the
New York State Constitution, as those claims arise out of the same common
nucleus of operative facts as do plaintiff's federal claims.

        3.      Under 28 U.S.C. §1391(b), venue is proper in the Southern District of
New York because the events forming the basis of the Complaint occurred in that
District.

## Parties

4.    Plaintiff ANDREW BOTTARI is a citizen of the United States of America residing in the State of New York, Village of Ardsley, County of Westchester.

5.    Plaintiff grew up in and around the Village of Ardsley, a village of approximately forty three hundred in southern Westchester County. The Village, which is about one and one half square miles in size, has a nineteen member police force.

6.    Mr. Bottari has, for the last seven years, made his home in Ardsley with his wife, Michelle, and their children, Olivia and Paul. Mr. Bottari served in the United States Marine Corp for four years and was honorably discharged in 1988. He is a graduate of Brooklyn Law School and served as an Assistant District Attorney for Kings County from 1998-2003. In 2004, he opened his own law practice with offices in White Plains.

7.    Defendant David Fisher was at all times relevant here a duly appointed and acting Village of Ardsley Police Sergeant.

8.    Defendant Michael Stevenson was at all times relevant here a duly appointed and acting Village of Ardsley Police Officer.

9.    At all times relevant, the defendants were acting under color of state law.

### Facts Underlying
### Plaintiff's Claims for Relief

10.    On March 3, 2005 shortly after midnight, Police Officer Michael Stevenson was on patrol in the Village of Ardsley traveling south on Saw Mill River Road. He saw Andrew Bottari standing at the rear of plaintiff's SUV, which was parked at the north end of 725 Saw Mill River Road, a commercial strip in the middle of the Village of Ardsley.

-2-

11.    Although Officer Stevenson did not suspect any criminal activity, he turned into the parking lot and proceeded north towards Mr. Bottari, who had shut the hatch and was walking to meet the defendant's patrol car.

12.    Defendant Stevenson questioned Mr. Bottari as to his name and what he was doing. Mr. Bottari announced that he was leaving and that he was not going to answer the defendant's question.

13.    Defendant Stevenson, who did not suspect any criminal activity, used his patrol car to block Mr. Bottari's auto. The defendant then radioed for assistance.

14.    Defendant David Fisher arrived.

15.    Both defendants were out of their patrol cars and they confronted Mr. Bottari. Plaintiff was ordered to take his hands from the pockets of the coat he was wearing. Mr. Bottari complied by announcing what he had in his hands (a wallet and a cellphone) and outstretching his arms to about shoulder height.

16.    Defendants Fisher and Stevenson, who did not suspect any criminal activity, converged on Mr. Bottari, grabbing plaintiff's arms, spinning him around and forcing him to the pavement. Defendants Fisher and Stevenson, or one of them, then struck Mr. Bottari in the back of the head.

17.    Plaintiff was taken by ambulance to a local hospital, the Dobbs Ferry Community Hospital, where his head wound was sutured.

18.    Mr. Bottari, again in handcuffs, was taken to the Ardsley Village Police Department. Defendants held him for a time until they released him with a Desk Appearance Ticket falsely charging Obstruction of Governmental Administration and Resisting Arrest, both Class A misdemeanors punishable by up to one year in jail, and Disorderly Conduct, a violation.

19.    Mr. Bottari hired a private attorney to defend him against defendants' false charges. Plaintiff was arraigned on March 21, 2005 and, after multiple court appearances, the charges were dismissed on speedy trial grounds on February 6, 2006.

-3-

20.    Mr. Bottari was arrested, charged and prosecuted even though he had committed no crimes and despite that defendants had no reasonable basis to believe that plaintiff had committed any crimes.

21.    The individual defendants, despite having a reasonable opportunity to do so, took no action to prevent, end, or truthfully report the unlawful assault and arrest. They instead acted to cover their misconduct by, among other things, falsely claiming that Mr. Bottari pushed defendant Fisher during the encounter and that the parties fell to the ground.

22.    Mr. Bottari suffered physical pain and suffering, loss of freedom, mental anguish, shock, trauma and deprivation of his constitutional rights, among other injuries. Plaintiff suffered the debasement, humiliation and loss of dignity of being unlawfully and publicly assaulted and arrested in the middle of his home town and of having the matter publicized in a local paper, the Enterprise.

23.    As a result of defendants' conduct, Mr. Bottari suffered a disfiguring laceration at his left eyebrow as well as injuries to his chin, left shoulder, knee and leg.

24.    Mr. Bottari was forced to appear in court multiple times to answer the police officers' baseless charges. He sustained approximately twenty thousand dollars in criminal defense costs.

25.    At all times relevant, and in using force on plaintiff, and arresting, imprisoning and prosecuting him, the defendants acted intentionally, willfully, maliciously, with reckless disregard for and deliberate indifference to plaintiff's rights.

## FIRST CLAIM FOR RELIEF
### FOR VIOLATING PLAINTIFF'S RIGHT
#### TO BE FREE FROM UNREASONABLE SEIZURES UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

26.    Plaintiff repeats the allegations of paragraphs 1-25 as though fully stated here.

-4-

27.     By the actions described above, the individual defendants, and

each of them, deprived Andrew Bottari of rights secured by the United States

Constitution, including, but not limited to, plaintiff's rights to be free and secure in

his person and to be free from arrest or search, except on probable cause or

pursuant to warrant.

28.     As a consequence thereof, Andrew Bottari has been injured.

## SECOND CLAIM FOR RELIEF
### FOR VIOLATING PLAINTIFF'S RIGHT
#### TO BE FREE FROM UNREASONABLE SEIZURES UNDER ARTICLE
ONE, SECTION TWELVE OF THE NEW YORK STATE CONSTITUTION

29.     Plaintiff repeats and realleges paragraphs 1-25 as though fully

stated here.

30.     By the actions described above, the individual defendants, and

each of them, deprived Andrew Bottari of rights secured by the Constitution of the

State of New York, including, but not limited to Mr. Bottari's right to be free and

secure in his person and his right to be free from arrest or search, except on

probable cause or pursuant to warrant.

31.     As a consequence thereof, Andrew Bottari has been injured.

## THIRD CLAIM FOR RELIEF
### FOR VIOLATING PLAINTIFF'S RIGHT
#### TO BE FREE FROM UNREASONABLE FORCE UNDER THE FOURTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

32.     Plaintiff repeats and realleges paragraphs 1-25 as though fully

stated here.

33.     By the actions described above, the individual defendants, and

each of them, deprived Andrew Bottari of rights secured by the United States

Constitution, including, but not limited to, the right to be free from excessive and

unreasonable force.

34.     As a consequence thereof, Andrew Bottari has been injured.

-5-

### FOURTH CLAIM FOR RELIEF
### FOR VIOLATING PLAINTIFF'S RIGHT TO BE FREE
### FROM UNREASONABLE FORCE UNDER ARTICLE ONE,
### SECTION TWELVE OF THE NEW YORK STATE CONSTITUTION

35. Plaintiff repeats and realleges paragraphs 1-25 as though fully stated here.

36. By the actions described above, the individual defendants, and each of them, deprived Andrew Bottari of rights secured by the New York State Constitution, including, but not limited to, the right to be free from excessive and unreasonable force.

37. As a consequence thereof, Andrew Bottari has been injured.

### FIFTH CLAIM FOR RELIEF FOR
### MALICIOUS PROSECUTION IN VIOLATION
### OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND
### FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

38. Plaintiff repeats and realleges paragraphs 1-25 as though fully stated here.

39. The individual defendants, and each of them, without probable cause and with actual malice, commenced and maintained a criminal proceeding against Mr. Bottari.

40. Mr. Bottari suffered a deprivation of liberty resulting from the government seizure in the form of legal process and by being forced to appear in Criminal Court to contest the baseless charges under threat of issuance of an arrest warrant and of arrest.

41. The prosecution terminated in plaintiff's favor when all charges against plaintiff were dismissed in a manner not inconsistent with plaintiff's innocence.

42. As a consequence thereof, Andrew Bottari has been injured.

## SIXTH CLAIM FOR RELIEF FOR FAILURE TO INTERVENE
## TO PREVENT THE VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

√+r

43.    Plaintiff repeats and realleges paragraphs 1-25 as though fully stated

here.

dey

44.    The individual defendants, and each of them, failed to intervene to

prevent, end, or truthfully report the unlawful conduct to which Mr. Bottari was

subjected, despite having a reasonable opportunity to do so.

deny

45.    As a consequence thereof, Andrew Bottari has been injured.


## Request for Relief

WHEREFORE, plaintiff respectfully requests that judgment be entered as

follows:

(A)    Declaratory relief as follows:

1.    A declaration that plaintiff's right to be free from
unreasonable and excessive force under the Fourth and
Fourteenth Amendments of the United States
Constitution was violated;

2.    A declaration that plaintiff's right to be free from
unreasonable and excessive force under the New York
State Constitution was violated;

3.    A declaration that plaintiff's right to be free from
unreasonable seizures under the Fourth and Fourteenth
Amendments of the United States Constitution was
violated;

4.    A declaration that plaintiff's right to be free from
unreasonable seizures under the New York State
Constitution was violated;

5.    A declaration that plaintiff's right to be free from
malicious prosecution under the United States
Constitution was violated;

(B)    Compensatory damages in an amount to be fixed at trial;

(C)    By reason of the wanton, willful and malicious character of the
conduct complained of herein, punitive damages in an amount to be
fixed at trial;

(D)    An award to plaintiff of the costs and disbursements herein;

-7-

(E)    An award of attorney's fees under 42 U.S.C. §1988; and

(F)    Such other and further relief as this Court may deem just and
       proper.

Dated: September 20, 2007
       Brooklyn, New York

MATTHEW FLAMM MF1309
  Attorney for Plaintiff
26 Court Street, Suite 600
Brooklyn, New York 11242
  (718) 797-3117

-8-

1) SOL
2) Qualified Immunity
3) Probable Cause
4) Constitutionals.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
======================================X
ANDREW BOTTARI,                                    Index No.: 07 civ 8192

                    Plaintiff,
                                                   **VERIFIED ANSWER**

  -   against –

DAVID FISHER and MICHAEL STEVENSON,
Employees of the Village of Ardsley Police
Department,

                    Defendants
======================================X

    Defendants named herein as **DAVID FISHER and MICHAEL STEVENSON,**

**Employees of the Village of Ardsley Police Department,** by its attorneys, **HODGES,**

**WALSH & SLATER, LLP,** as and for an Answer to plaintiff's Complaint dated

September 20, 2007, allege upon information and belief as follows:

### AS AND FOR AN ANSWER TO NATURE OF THE ACTION

1. These answering defendants deny each and every allegation set forth in

    paragraph "1" of plaintiff's complaint.

### AS AND FOR AN ANSWER TO JURISDICTION AND VENUE

2. These answering defendants deny each and every allegation set forth in

    paragraphs "2", and "3" of the plaintiff's complaint.

3. These answering defendants deny knowledge or information sufficient to form a

    belief as to the truth of the allegations set forth in paragraphs designated "4", "5",

    and "6" of plaintiffs' Complaint.

4. These answering defendants deny knowledge or information sufficient to form a

    belief as to the truth of the allegations set forth in paragraph designated "9" of

plaintiffs' Complaint, and respectfully refers all questions of law to the Honorable
Court.

## AS AND FOR AN ANSWER TO FACTS UNDERLYING PLAINTIFF'S CLAIMS FOR RELIEF

5. These answering defendants deny each and every allegation set forth in
paragraphs "11", "13", "15", 16", "18", "20", "21", "22', "23", "24", and "25", of
plaintiff's complaint.

6. These answering defendants deny knowledge or information sufficient to form a
belief as to the truth of the allegations set forth in paragraphs designated "17",
and "19", of plaintiffs' Complaint.

## AS AND FOR AN ANSWER TO FIRST CLAIM FOR RELIEF FOR VIOLATING PLAINTIFF'S RIGHT TO BE FREE FROM UNREASONABLE SEIZURES UNDER THE FOURTH AND FOURTEENTH AMENDEMENTS TO THE UNITED STATES CONSTITUTION

7. These answering defendants repeat, reiterate and reallege each and every
response previously set forth above with the same force and effect as if fully set
forth at length herein in responding to paragraph designated '26' of plaintiff's
Complaint.

8. These answering defendants deny each and every allegation set forth in
paragraphs "27" and "28", of plaintiff's complaint.

## ĀS AND FOR AN ANSWER TO SECOND CLAIM FOR RELIEF TOBE FREE FROM UNREASONBALE SEIZURES UNDER ARTICLE ONE, SECTION TWELVE OF THE NEW YORK STATE CONSTITUTION

9. These answering defendants repeat, reiterate and reallege each and every
response previously set forth above with the same force and effect as if fully set

forth at length herein in responding to paragraph designated '29' of plaintiff's

Complaint.

10. These answering defendants deny each and every allegation set forth in

paragraphs "30" and "31", of plaintiff's complaint.

## AS AND FOR AN ANSWER TO THIRD CLAIM FOR RELIEF FOR VIOLATING PLAINTIFF'S RIGHT TO BE FREE FROM UNREASONABLE FORCE UNDER THE FOURTH AND FOURTEENTH AMENDEMENTS TO THE UNITED STATES CONSTITUTION

11. These answering defendants repeat, reiterate and reallege each and every

response previously set forth above with the same force and effect as if fully set

forth at length herein in responding to paragraph designated "32" of plaintiff's

Complaint.

12. These answering defendants deny each and every allegation set forth in

paragraphs "33" and "34", of plaintiff's complaint.

## AS AND FOR AN ANSWER TO FOURTH CLAIM FOR RELIEF FOR VIOLATING PLAINTIFF'S RIGHT TO BE FREE FROM UNREASONABLE FORCE UNDER ARTICLE ONE, SECTION TWELVE OF THE NEW YORK STATE CONSTITUTION

13. These answering defendants repeat, reiterate and reallege each and every

response previously set forth above with the same force and effect as if fully set

forth at length herein in responding to paragraph designated "35" of plaintiff's

Complaint.

14. These answering defendants deny each and every allegation set forth in

paragraphs "36" and "37", of plaintiff's complaint.

## AS AND FOR AN ANSWER TO A FIFTH CLAIM FOR RELIEF FOR MALICIOUS PROSECUTION IN VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

15. These answering defendants repeat, reiterate and reallege each and every response previously set forth above with the same force and effect as if fully set forth at length herein in responding to paragraph designated "38" of plaintiff's Complaint.

16. These answering defendants deny each and every allegation set forth in paragraphs "39", "40", "42", of plaintiff's complaint.

17. These answering defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph designated "41" of plaintiffs' Complaint, and respectfully refers all questions of law to the Honorable Court.

## AS AND FOR AN ANSWER TO SIXTH CLAIM FOR RELIEF FOR FAILURE TO INTERVENE TO PREVENT THE VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

18. These answering defendants repeat, reiterate and reallege each and every response previously set forth above with the same force and effect as if fully set forth at length herein in responding to paragraph designated "43" of plaintiff's Complaint.

19. These answering defendants deny each and every allegation set forth in paragraphs "44" and "45", of plaintiff's complaint.

### AFFIRMATIVE DEFENSES

20. The plaintiff's claims are barred by her failure to comply with the applicable provisions of the General Municipal Law of the State of New York.

21. The defendants are entitled to qualified immunity.

22. The defendants are entitled to absolute immunity.

23. The defendants' conduct was based upon probable cause.

24. The plaintiff's claim for punitive damages is barred by public policy and the laws
    of the State of New York.

25. The defendants acted in good faith and without malice.

26. The plaintiff's damages, if any, were caused and/or contributed to by reason of
    the culpable conduct of the plaintiff.

27. The plaintiff's damages, if any, were caused and/or contributed to be reason of
    the improper and unlawful acts of the plaintiff.

28. The plaintiff's damages, if any, were created and caused, in whole or in part, by
    the plaintiff's failure to take steps to mitigate such damages.

29. The plaintiff's claims do not rise to the level of a constitutional violation as against
    these defendants.

30. The actions of the plaintiff were a motivating factor for the conduct of the
    defendants complained of in the plaintiff's complaint.

Dated: White Plains, New York
       October 18, 2007

                                        *Paul E. Svensson*

                                        PAUL E. SVENSSON (3403)
                                        Hodges Walsh & Slater, LLP
                                        Attorneys for Defendants
                                        55 Church Street
                                        White Plains, NY 10601

To:    Matthew Flamm
       Attorney for the Plaintiff
       26 Court Street, Suite 600
       Brooklyn, NY 11242
       718-797-3117

## VERIFICATION

STATE OF NEW YORK            )
                                           SS.:
COUNTY OF WESTCHESTER   )

I, THE UNDERSIGNED, AM AN ATTORNEY ADMITTED TO PRACTICE IN THE

COURTS OF THE STATE OF NEW YORK, AND SAY THAT: I AM THE ATTORNEY

OF RECORD, OR OF COUNSEL WITH THE ATTORNEY OF RECORD, FOR THE

DEFENDANTS, **DAVID FISHER and MICHAEL STEVENSON, Employees of the**

**Village of Ardsley Police Department.** I HAVE READ THE ANNEXED **VERIFIED**

**ANSWER**, KNOW THE CONTENTS THEREOF, AND THAT SAME ARE TRUE TO MY

OWN KNOWLEDGE, EXCEPT THOSE MATTERS THEREIN WHICH ARE STATED

TO BE ALLEGED UPON INFORMATION AND BELIEF, AND AS TO THOSE

MATTERS THEREIN NOT STATED UPON KNOWLEDGE, IS BASED UPON THE

FOLLOWING:  MATERIAL IN THE FILE, INFORMATION AND DOCUMENTS

CONTAINED IN SAID FILE.


Dated: White Plains, New York
        October 18, 2007

_Paul E. Sven_

PAUL E. SVENSSON

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK      )
                          SS.:)
COUNTY OF WESTCHESTER   )

      TRACIE TOBACCO  being duly sworn, deposes and says:

      I am employed by the law firm of HODGES, WALSH & SLATER, LLP, counsel

for Defendant in the above action and I am over the age of 18 years and I am not a

party to this action.  On October 18, 2007 I served a true copy of the annexed **Verified**

**Answer** in the following manner: by mailing same in a sealed envelope, with postage

prepaid thereon, in a post office or official depository of the U.S. Postal Service within

the State of New York addressed to the last known address of all attorneys in this action

as indicated below:

TO:   Matthew Flamm
      Attorney for the Plaintiff
      26 Court Street, Suite 600
      Brooklyn, NY  11242
      718-797-3117

TRACIE TOBACCO

Sworn to before me this
18th Day of October, 2007 PAUL E. SVENSSON
             Notary Public - State of New York
             No. 02SV6089565
             Qualified in Dutchess County
             My Commission Expires 03/24/2011
Notary Public

Index No.: 07 civ 8192

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=====================================X
ANDREW BOTTARI,

                    Plaintiff,

    -    against –

DAVID FISHER and MICHAEL STEVENSON,
Employees of the Village of Ardsley Police
Department,

                    Defendants
=====================================X


## VERIFIED ANSWER


HODGES, WALSH & SLATER LLP
Attorneys for Defendants
75 South Broadway
White Plains, New York  10601
(914) 304-4333

1

2    U.S. DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK

3    -------------------------------------------X
       ANDREW BOTTARI,

4

5                        PLAINTIFF(s),

6           -against-

7                  Docket No: 07-cv-8192

8    DAVID FISCHER and MICHAEL STEPHENSON,
       employees of the Village of Ardsley Police

9    Department,

10                   DEFENDANT(s).
    -------------------------------------------X

11

12           DATE: January 7, 2008

13             TIME: 12:06 P.M.

14

15

16           EXAMINATION BEFORE TRIAL of the

17    Plaintiff, ANDREW BOTTARI, taken by the

18    Defendant, pursuant to a Court Order, held

19    at the offices of Hodges, Walsh & Slater,

20    L.L.P., 55 Church Street, Suite 211, White

21    Plains, New York 10601, before Marni

22    Galletta, a Notary Public of the State of

23    New York.

24

25

1                          BOTTARI

2          Q.    What had you been doing at your

3     house prior to leaving and going to the CVS

4     parking lot?

5          A.    Watching TV.

6          Q.    Were you watching TV with

7     anybody?

8          A.    I don't recall.

9          Q.    Was your wife home before you

10    left to go to the CVS parking lot?

11         A.    Yes.

12         Q.    Your children home?

13         A.    Yes.

14         Q.    What was your purpose for going

15    to the CVS parking lot?

16         A.    No purpose.

17         Q.    What time did you leave your

18    house?

19         A.    Approximately 12.

20         Q.    You drove directly to the

21    parking lot?

22         A.    Drove down to the village and

23    then I decided to park in the parking lot.

24         Q.    Did you drive through the

25    village?

1                           BOTTARI

2          A.    I don't remember.

3          Q.    Did you see anybody that you

4    knew between the time you left your house

5    and the time you first spoke to a police

6    officer that night?

7          A.    No.

8          Q.    Had you had any arguments with

9    your wife that evening?

10         A.    No.

11         Q.    Did you have a cell phone with

12   you at the time you went to the parking

13   lot?

14         A.    Yes.

15         Q.    Had you received any phone

16   calls that evening before you left to go to

17   the parking lot?

18         A.    Not that I recall.

19         Q.    Had you ever gone to this

20   parking lot before?

21         A.    Yes.

22         Q.    At night?

23         A.    Yes.

24         Q.    Were any stores open when you

25   arrived?

```
1                           BOTTARI
2        A.    No.
3        Q.    How far is it from your house?
4        A.    Miles-wise or time-wise?
5        Q.    Let's start with miles.
6        A.    Approximately one mile.
7        Q.    What road is the parking lot
8  on?
9        A.    Saw Mill River Road.
10       Q.    So if you were to drive
11 directly from your house to the parking
12 lot, what route would you take?
13       A.    Springwood to Riverview to
14 Euclid to Ashford, Legion Drive, Center
15 Street, Ashford Avenue, but there might be
16 another route too.  There are two different
17 routes I would take.
18            MR. FLAMM:  Well, were you
19         describing the route that you took
20         that night or --
21            THE WITNESS:  That's probably
22         the route that I took.  They are
23         close to each other.
24       Q.    There are other routes as well?
25       A.    Yes.
```

21

```
 1                         BOTTARI
 2          A.    And meet people, sure.
 3          Q.    Had you consumed any illegal
 4    drugs that evening at all before the police
 5    arrived?
 6          A.    No.
 7          Q.    Had you consumed any alcohol
 8    that evening?
 9          A.    No.
10          Q.    Were you on any medication at
11    the time?
12          A.    No.
13          Q.    Had you failed to take
14    medication that had been prescribed for you
15    that you should have taken?
16          A.    No.
17          Q.    What position was your vehicle
18    parked in relative to the CVS store?
19          A.    It was perpendicular to CVS and
20    it was backed in.
21          Q.    Is there a sidewalk in front of
22    that CVS store?
23          A.    Yes.
24          Q.    How close was the rear of your
25    car to that sidewalk at the time the police
```

```
 1                        BOTTARI

 2          Q.    How did you first become aware

 3    of a police officer being at that parking

 4    lot?

 5          A.    I noticed him drive by.

 6          Q.    He passed the shopping center?

 7          A.    Yes.

 8          Q.    Did you see him come back?

 9          A.    Yes.

10          Q.    Did you see his vehicle turn

11    into the shopping center?

12          A.    Yes.

13          Q.    How long after he drove by did

14    he return?

15          A.    I'll say approximately one

16    minute, maybe less.

17          Q.    At the time you saw the police

18    officer pull into that shopping center

19    parking lot, were there any doors open in

20    your vehicle?

21          A.    I don't remember.

22          Q.    Were you sitting in your

23    vehicle when the police officer returned to

24    the parking lot?

25          A.    I think I was walking to the
```

1                         BOTTARI

2    front of my vehicle, to the front door, the

3    front driver's side door.

4         Q.    Where had you been immediately

5    before you started walking to the driver's

6    side door?

7         A.    The rear of my vehicle.

8         Q.    What were you doing at the rear

9    of your vehicle prior to walking to the

10   front door?

11        A.    I was going to tidy up the back

12   of the car.

13        Q.    What type of car was it?

14        A.    An SUV.

15        Q.    What make and model?

16        A.    GMC Denali.

17        Q.    Do you remember what year?

18        A.    2004.

19        Q.    What type of stereo system did

20   it have?

21        A.    A Bose.

22        Q.    So to tidy up the back of the

23   car, was it necessary for you to open up

24   the hatchback in the back of the car?

25        A.    No.

```
 1                        BOTTARI
 2        Q.    Was the hatchback open at the
 3   time?
 4        A.    No.
 5        Q.    Was the hatchback open when the
 6   police officer first drove by the shopping
 7   center?
 8        A.    I don't remember, but at some
 9   point it was open.
10        Q.    At some point, did you then
11   close the hatchback?
12        A.    Yes.
13        Q.    How long before you saw the
14   police officer pull in the parking lot did
15   you close that hatchback?
16             MR. FLAMM:  Objection.
17             You can answer.
18        A.    I don't remember.
19        Q.    Was is it open when the police
20   officer pulled in?
21        A.    I don't think so.  I am not
22   really sure because by the time he got -- I
23   was by the front door of my car and then he
24   pulled up.
25        Q.    Did you actually tidy up the
```

```
 1                          BOTTARI
 2     rear of the vehicle at all?
 3          A.    No.
 4          Q.    How long were you out of the
 5     vehicle before he pulled into the parking
 6     lot, the police officer?
 7          A.    Maybe 30 seconds, a minute,
 8     very brief period of time.
 9          Q.    Did you get out of the vehicle
10     before or after you saw the police officer
11     first drive by?
12          A.    I don't remember.
13          Q.    Was the hatchback open or
14     closed when the police officer first drove
15     by?
16                MR. FLAMM:  I think it was
17            asked and answered.
18                You may answer it again.
19                MR. WALSH:  Thank you.
20          A.    I don't remember.
21          Q.    Was the police officer in a
22     police cruiser, in a marked vehicle?
23          A.    In a marked vehicle, yes.
24          Q.    Was he wearing a uniform?
25          A.    Yes.
```

1                        BOTTARI

2          Q.    Do you know the name of the

3    first officer that arrived at the scene?

4          A.    Police Officer Stephenson.

5          Q.    Did you have a conversation

6    with Police Officer Stephenson when he

7    first arrived at the scene?

8              MR. FLAMM:  Note my objection.

9              You can answer.

10         A.    It was a conversation.

11         Q.    The first conversation you had

12   with Police Officer Stephenson, was he in

13   his vehicle or outside of his vehicle?

14         A.    He was inside his vehicle.

15         Q.    When you first had a

16   conversation with Officer Stephenson, were

17   you inside your vehicle or outside your

18   vehicle?

19         A.    I wouldn't characterize it as a

20   conversation.

21         Q.    All right.

22              When the first words were

23   spoken by either you or Officer Stephenson

24   in the park lot that evening, were you

25   inside your vehicle or outside of your

```
1                           BOTTARI
2    vehicle?
3         A.    I was outside of my vehicle.
4         Q.    Who spoke first; you or Officer
5    Stephenson?
6         A.    Officer Stephenson.
7         Q.    What were the first words he
8    said to you?
9         A.    He asked what I was doing
10   there.
11        Q.    Did you respond?
12        A.    Yes.
13        Q.    What did you say?
14        A.    I said, "I am not doing
15   anything."
16        Q.    What did he say then?
17        A.    He said, "what are you doing
18   here?" I responded, "I am not doing
19   anything. I am just here." Then he asked
20   again and I said, "I am listening to music.
21   "
22        Q.    When he pulled in, did his
23   vehicle come behind your vehicle or to one
24   side or the other?
25        A.    It was not behind my vehicle.
```

1                          BOTTARI

2          Q.    Okay.

3                Was there anything between you

4    and his vehicle when the two of you first

5    spoke?

6          A.    What do you mean?

7          Q.    Well, was his car on the other

8    side of your vehicle or on the same side

9    you were on?

10         A.    His vehicle was on the same

11   side as I was on.

12         Q.    Which was the driver's side?

13         A.    Correct.

14         Q.    How far from your vehicle was

15   his vehicle stopped when the two of you

16   first spoke?

17         A.    Maybe four steps, five steps.

18         Q.    Did there come a time when

19   Officer Stephenson got out of his vehicle?

20         A.    Yes, he did get out of his

21   vehicle.

22         Q.    How long after the first

23   conversation did he get out of his vehicle?

24         A.    I don't remember how long.

25         Q.    Did you see him use his radio

```
 1                    BOTTARI
 2   at all prior to him getting out of his
 3   vehicle?
 4        A.    Yes.
 5        Q.    Did you overhear what he said
 6   when he used his radio?
 7        A.    No.
 8        Q.    Did you get back in your
 9   vehicle before Officer Stephenson got out
10   of his?
11        A.    No.
12        Q.    Did you at any time get back in
13   your vehicle that evening before being
14   taken away?
15        A.    No.
16        Q.    Was there any further
17   conversation between you and Officer
18   Stephenson while he was still in his
19   vehicle after you told him you were
20   listening to music?
21        A.    Yes.
22        Q.    What else was said while he was
23   still in his vehicle?
24        A.    I said, "I am going to go home.
25   I am going to leave."
```

1                        BOTTARI

2          Q.    And did he respond?

3          A.    Yes.

4          Q.    What did he say?

5          A.    He said, "no, you are not."

6          Q.    Was there any further

7    conversation before he got out of his

8    vehicle?

9          A.    Yes.

10         Q.    What else was said before he

11   got out of his vehicle?

12         A.    I said, "what are you doing?"

13         Q.    Did he respond?

14         A.    No.  He just pulled his car up

15   in front of my car blocking my vehicle in.

16         Q.    Did he put his car in reverse

17   to do that?

18         A.    I don't think so.  He pulled it

19   forward.

20         Q.    How would you characterize the

21   tone of voice Officer Stephenson used

22   during the conversation you had with him

23   while he was still in his car?

24         A.    Interrogative.

25         Q.    How about the tone of voice

```
 1                         BOTTARI
 2      that you used; what type of tone of voice
 3      did you use in response to his questions?
 4           A.    Monotone, the way I am speaking
 5      to you now.
 6           Q.    After he pulled his vehicle in
 7      behind yours, did Officer Stephenson get
 8      out of his vehicle?
 9           A.    He did.
10           Q.    Did there come a time when
11      another police officer arrived?
12           A.    Yes.
13           Q.    About how long after Officer
14      Stephenson got there did the second officer
15      arrive?
16           A.    Approximately one to two
17      minutes.
18           Q.    Had Officer Stephenson moved
19      his vehicle to block yours in prior to the
20      arrival of the other officer?
21           A.    Yes.
22           Q.    Do you know the name of the
23      other officer?
24           A.    Yes.
25           Q.    What is his name?
```

```
 1                      BOTTARI
 2          A.    Sergeant Fischer.
 3          Q.    Had Officer Stephenson gotten
 4   out of his vehicle before the arrival of
 5   Sergeant Fischer?
 6          A.    Yes.
 7          Q.    Where were you in relation to
 8   your driver's side door when Sergeant
 9   Fischer arrived?
10          A.    I was -- I don't remember
11   exactly.
12          Q.    Were you still within five feet
13   of your vehicle?
14          A.    Yes.
15          Q.    When Stephenson first arrived,
16   was your driver's side door open?
17          A.    I don't remember.
18          Q.    How about when Fischer first
19   arrived, was your driver's side door open?
20          A.    I don't recall.
21          Q.    At any time that evening, did
22   you reopen the driver's door?
23          A.    I did.
24          Q.    Do you recall whether that was
25   before or after either of the police
```

DIAMOND REPORTING   (718) 624-7200    info@diamondreporting.com

1                    BOTTARI
2    officers arrived?
3         A.    It was when I said, "I am going
4    to get back in my car and leave."  I went
5    to open my door and he pulled up in front
6    of my door.  I don't recall if I shut the
7    door or not after that.
8         Q.    So it was after you opened your
9    door that Officer Stephenson moved his
10   vehicle behind yours?
11        A.    Say that again.
12        Q.    What is the sequence of events
13   regarding you opening the door and him
14   moving his vehicle?  Did you open the door
15   before he moved his vehicle or at the same
16   time or after he moved his vehicle?
17        A.    I said that I was going home
18   or, "I am leaving" and I went to open --
19   and he said, "no, you are not" and
20   somewhere in there, I opened the door and
21   then he pulled his car in front of my
22   vehicle.
23        Q.    Was there any conversation
24   between you and Officer Stephenson after he
25   got out of his vehicle and before Sergeant

```
1                        BOTTARI
2    Fischer arrived?
3         A.    I don't remember.
4         Q.    Where in relation to your
5    vehicle did Officer Fischer pull his
6    vehicle to a stop?
7         A.    His vehicle was north and west
8    of my vehicle.
9         Q.    If you were sitting in your
10   driver's side behind the steering wheel,
11   would his vehicle have been to the left, to
12   the right, straight ahead?
13        A.    To the right.
14        Q.    And how far away from your
15   vehicle?
16        A.    Maybe 10 steps.
17        Q.    Where were you when Officer
18   Fischer first arrived, Sergeant Fischer?
19        A.    Next to my vehicle.
20        Q.    Still near the driver's side
21   door?
22        A.    Same area, yeah.
23        Q.    Where was Officer Stephenson
24   when Sergeant Fischer first arrived?
25        A.    Near his vehicle.
```

```
 1                         BOTTARI
 2    how big is he?
 3         A.    Under six feet, maybe
 4    five-eleven.
 5         Q.    As they stood one to your left
 6    and one to your right, did either one of
 7    them say anything to you?
 8         A.    Yes.
 9         Q.    Which one spoke?
10         A.    Officer Stephenson.
11         Q.    What did Officer Stephenson
12    say?
13         A.    He said, "get your hands out of
14    your pockets."
15         Q.    What did you say?
16         A.    I asked him why.
17         Q.    What did he say?
18         A.    He responded, "for safety
19    reasons."
20         Q.    Did you then take your hands
21    out of your pockets?
22         A.    Not immediately.
23         Q.    Did you say anything else to
24    Officer Stephenson after he said, "for
25    safety reasons?"
```

1                           BOTTARI

2          A.    Yes.

3          Q.    What did you say?

4          A.    I said, "I have my phone in one

5    pocket and my wallet in the other."

6          Q.    Why did you tell him that?

7          A.    Because I wanted them to know I

8    had something I was going to pull out of my

9    pockets.

10         Q.    Did they ask you to take

11   anything out of your pockets?

12         A.    No.

13         Q.    Why were you going to take

14   these things out of your pockets?

15         A.    I just did.  I just said that.

16   I was pulling my hands out of my pockets

17   and I had stuff in it and I wanted them to

18   know this is what I had.

19         Q.    Did you have anything else in

20   your pockets besides your phone and your

21   wallet?

22         A.    No.

23         Q.    Did you have a business card

24   case at the time?

25         A.    I don't recall.  But I can tell

```
 1                          BOTTARI
 2   you this, I don't use a business card case.
 3        Q.    Did you own one at the time?
 4        A.    I might have.
 5        Q.    Was it metallic?
 6        A.    Yes.
 7        Q.    Do you recall whether or not
 8   you had that with you on this particular
 9   evening?
10        A.    No.
11        Q.    You don't remember?
12        A.    I don't recall having it that
13   evening.
14        Q.    How long did you keep your
15   hands out of your pockets for when you took
16   your wallet and your cell phone out of your
17   pockets?
18        A.    Until they grabbed me.
19        Q.    At any time did you return your
20   hands to your pockets before they grabbed
21   you?
22        A.    No.
23        Q.    How long after you took your
24   wallet and cell phone out of your pockets
25   did they grab you?
```

```
 1                          BOTTARI
 2          A.    Very briefly.  I would say
 3    approximately five to -- about five
 4    seconds.
 5          Q.    Could it have been less than
 6    five seconds?
 7          A.    It's possible.
 8          Q.    Where were your hands when they
 9    grabbed you?
10          A.    My hands were near my
11    shoulders.
12          Q.    Were they being held straight
13    out in front of you or were your elbows
14    bent?
15          A.    My elbows were bent
16    (indicating).
17                MR. FLAMM:  Were they like this
18          (indicating)?
19                THE WITNESS:  Exactly.
20          Q.    Were you holding the wallet and
21    cell phone up in your hands?
22          A.    Yes.
23                THE WITNESS:  I am going to get
24          some water.
25                (Whereupon, a short recess was
```

44

```
 1                         BOTTARI
 2            taken.)
 3            Q.    From the time you removed your
 4     hands from your pockets until the time you
 5     were grabbed by the officers, did either of
 6     them say anything else?
 7            A.    I don't remember.
 8            Q.    How about you; after you took
 9     your hands out of your pockets and before
10     you were grabbed, did you say anything?
11            A.    Yes.
12            Q.    What did you say?
13            A.    "What are you doing?"
14            Q.    There was no response from them
15     prior to them grabbing hold of you?
16            A.    No.
17            Q.    Did both Officer Stephenson and
18     Sergeant Fischer take hold of you?
19            A.    Yes.
20            Q.    What portion of your body did
21     Officer Stephenson take hold of?
22            A.    My left arm, left shoulder.
23            Q.    With both of his hands?
24            A.    Yes.
25            Q.    What part of your body did
```

```
1                        BOTTARI
2    Sergeant Fischer take hold of?
3         A.    My right arm.
4         Q.    Did you resist after they took
5    hold of you?
6              MR. FLAMM:  Objection.
7              You can answer.
8         A.    No.
9         Q.    Did you pull your arms away
10   from the officers?
11        A.    No.
12        Q.    Did the three of you fall to
13   the ground?
14        A.    No.
15        Q.    Did any of you fall to the
16   ground?
17        A.    No.
18        Q.    Did there come a time when you
19   ended up own the ground?
20        A.    Yes.
21        Q.    How long after they took hold
22   of your arms did you end up on the ground?
23        A.    A second or two.
24        Q.    Did either Sergeant Fischer or
25   Officer Stephenson also end up on the
```

1                          BOTTARI

2          A.    Yes.

3          Q.    How long before they grabbed

4    your arms did you advise them you were a

5    prosecutor?

6          A.    I'm sorry.  I didn't inform

7    them before they grabbed my arms.

8          Q.    Did you tell them you were an

9    attorney before they grabbed your attorney?

10         A.    No.

11         Q.    At what point did you first

12   advise them that you were an attorney?

13         A.    As they were grabbing my arms

14   and throwing me to the ground.

15         Q.    What did you say?

16         A.    I said, "wait a second.  I am a

17   former prosecutor.  I am an attorney."

18         Q.    Did they respond at all to that

19   statement?

20         A.    No.

21         Q.    At any time did you tell them

22   you were refusing to remove your hands from

23   your pockets?

24         A.    No.

25         Q.    Did you at any time tell them



DEPOSITION EXHIBIT

A    F.I.
8-15-06

FILED
2/6/06

JUSTICE COURT OF THE VILLAGE OF ARDSLEY
COUNTY OF WESTCHESTER
----------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,                    File No.
                                                        05030008
            ---- against ----

                                                        OPINION
ANDREW R. BOTTARI,                                      DECISION & ORDER

                        Defendant.

----------------------------------------------X

SCHWARTZ, Village Justice:

        Defendant moves, pursuant to Criminal Procedure Law
170.30(1)(e), to dismiss the accusatory instruments, dated March 3,
2005 and October 27, 2005, upon the grounds that the People were
not ready for trial within the statutory period provided for in CPL
30.301(b).

        Alternatively, defendant moves, pursuant to CPL 100.40
and CPL 170.35, to dismiss each of the three charges of Obstructing
Governmental Administration in the Second Degree (Penal Law 195.05,
Class A Misdemeanor), Resisting Arrest (Penal Law 205.30, Class A
Misdemeanor) and Disorderly Conduct (Penal Law 240.20, Violation),
all arising out of an incident in the Village of Ardsley on March
3, 2005, upon the grounds that the October 27, 2005 Information is
facially insufficient. Also, alternatively, defendant moves, upon
constitutional grounds, after a Huntley hearing conducted on
October 27, 2005, to preclude the People from introducing evidence
of statements allegedly made by defendant.

        The motion is supported by an Affirmation/Memorandum of
Law of ROCCO F. D'AGOSTINO, Esq., attorney for Defendant, dated
November 29, 2005, and counsel's Reply Affirmation, dated December

19, 2005. It is opposed by an Affirmation in Opposition of Assistant District Attorney KIERAN T. BYRNE, dated December 15, 2005, and counsel's Memorandum of Law.

The threshold question is whether this proceeding must be dismissed upon speedy trial grounds.

CPL 30.30(1)(b) provides in pertinent part that the People must be ready within "ninety days of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a misdemeanor punishable by a sentence of imprisonment of more than three months and none of which is a felony." Otherwise, a motion to dismiss pursuant to CPL 170.30(1)(e) must be granted.

Defendant BOTTARI was arraigned on March 21, 2005 in the presence of counsel, at which time the People announced their readiness for trial. Thereupon, the matter was adjourned for motions at defendant's request to May 23, 2005. On that date, the defendant requested a Huntley hearing, which the Court set down for June 30, 2005. The defense does not argue that this time is includable. Thus far, no time was charged against the People.

Prior to June 30, 2005, the People requested an adjournment of the hearing due to the vacation schedule of one of the police witnesses and a new hearing date for scheduled for July 21, 2005. Defendant did not consent. This period of time, 21 days, was chargeable to the People. (Running Total: 21 days.)

On July 21, 2005, the People again requested an adjournment due to the District Attorney's unavailability, and the hearing was rescheduled for August 18, 2005. Defendant did not

consent. This period of time, 28 days, was chargeable to the People. (Running Total: 49 days.)

Prior to August 18, 2005, the People again requested an adjournment due to witness unavailability, and the matter was placed on the all purpose calendar for August 22, 2005. Defendant did not consent. This period of time, 4 days, was chargeable to the People. (Running Total: 53 days.)

On August 22, 2005, the matter was placed by the Court on a pre-hearing conference for August 29, 2005. This period of time, 7 days, was chargeable to the People. (Running Total: 60 days.)

To this point, the People concede all adjournments from June 30, 2005 (the date of the originally scheduled Huntley hearing) to August 29, 2005 to be at the People's request and thus chargeable to the People. However, they maintain that all later adjournments were chargeable to the defendant. The defense urges otherwise.

On August 29, 2005, the defendant and his counsel failed to appear. The Court rescheduled the matter for conference on September 12, 2005, at which time a conference was conducted and the Court scheduled the Huntley hearing for September 15, 2005. The parties do not dispute and the Court finds that this time was excluded. (Running Total remains: 60 days.) Parenthetically, the People's Memorandum of Law refers to a pre-trial conference on September 21, 2005. This date is incorrect as the Court did not meet on September 21, 2005.

What transpired after September 12, 2005 becomes critical in deciding the within motion. On September 13, 2005, two days

3

before the rescheduled hearing date of September 15, 2005, the District Attorney called the Court and requested a postponement of the September 15 hearing until October 27, 2005 upon the grounds that the People would not be available until that date.

This request for adjournment on the part of the People was memorialized in a letter to the Court, dated September 15, 2005, faxed by defendant's counsel, with copy to the A.D.A. The letter states and so confirms that the hearing "has been adjourned at the People's request to Thursday October 27th, 2005." It is clear that the District Attorney's office received the fax. No reply was sent the Court by the People. It is also clear that the defendant did not make the application nor consent. Consequently, any intervening time was chargeable to the People.

The Huntley hearing adjourned date of October 27, 2005 resulted from the People's request for adjournment. This additional period of 42 days between September 15, 2005 and October 27, 2005 brings the Total Time chargeable to the People to 102 days.

On October 27, 2005, defendant was arraigned upon a new accusatory instrument. Notwithstanding, the Huntley hearing proceeded; Decision thereon was reserved and has not been rendered to date.

Based upon the foregoing chronology, a total of 102 days were chargeable to the People, thus exceeding the 90-day statutory period. Consequently, all charges must be dismissed pursuant to CPL 30.30(1)(b).

Under the circumstances, the balance of defendant's motion is rendered moot.

4

This constitutes the Opinion, Decision and Order of this Court.

DATED:    February 3, 2006

WALTER SCHWARTZ
Village Justice

TO:    A.D.A. KIERAN BYRNE
       Office of the DISTRICT ATTORNEY
       OF WESTCHESTER COUNTY
       188 Tarrytown Road
       White Plains, New York 10607
       (914) 995-4075

       ROCCO F. D'AGOSTINO, Esq.
       Attorney for Defendant
       445 Hamilton Avenue (#607)
       White Plains, New York 10601
       (914) 682-1993

STATE OF NEW YORK          )
                                                        SS.:)
COUNTY OF WESTCHESTER   )

KIM LAMBERTUS,  being duly sworn, deposes and says:

I am employed by the law firm of HODGES, WALSH & SLATER, LLP, counsel

for Defendant in the above action and I am over the age of 18 years and I am not a

party to this action.  On January 31, 2008, I served a true copy of MEMORANDUM OF

LAW, NOTICE OF MOTION, AFFIRMATION IN SUPPORT and STATEMENT OF

FACTS, by mailing same in sealed envelope, with postage prepaid thereon, in an official

depository of the U.S. Postal Service within the State of New York addressed to the last

known address of all attorneys in this action, to wit:

TO:    Matthew Flamm
         Attorney for Plaintiff
         26 Court Street, Suite 600
         Brooklyn, New York  11242

_____
KIM LAMBERTUS

Sworn to before me this
31st Day of January, 2008
                    PAUL E. SVENSSON
              Notary Public - State of New York
                    No. 02SV6059565
              Qualified in Dutchess County
Notary Public Commission Expires 03/24/2011