UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ANDREW BOTTARI,

                Plaintiff,

- against -

DAVID FISHER and MICHAEL STEVENSON,
employees of the Village of Ardsley Police
Department,

                Defendants.

PLAINTIFF'S STATEMENT
PURSUANT TO LOCAL RULE 56.1
IN RESPONSE AND OPPOSITION
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
07-CV-8192 (CLB)

----------------------------------------------------------------x

      Genuine issues of material fact prevent entry of summary judgment in this matter. The Plaintiff sets out the following as his Rule 56.1 Statement in Response and Opposition to Defendants' Summary Judgment Motion. Pursuant to Fed.R.Civ.P. 56(e), exhibits relied upon by plaintiff are annexed hereto.

Defendants' Statement  ¶1

      On March 3, 2005, around midnight, plaintiff left his home and drove to the parking lot of a local strip mall. (Exhibit A, Par. 10; Exhibit C, p. 15-7).

Plaintiff's Response to Defendants' Statement  ¶1

      Admitted, insofar as it goes.

      At around midnight on March 3, 2005, Exh. 4: Transcript of Plaintiff's August 16, 2006 Testimony Pursuant to General Municipal Law §50-h at p.15 ll.15-20, Mr. Bottari drove the family car, a 2004 GMC Denali SUV, Exh. 3 : Transcript of Plaintiff's August 15, 2006 Testimony Pursuant to General Municipal Law §50-h at p.9 ll.13-15, from his home to the parking lot in the center of Ardsley. Exh. 3 at p.7 l.20 - p.9 l.2; Exh. 5: Transcript of Plaintiff's January 7, 2008 Deposition at p.13 l.20 - p.14 l.12 and at p.14 l.21 - p.15 l.23; Exhibit 7: Photograph.

      Andrew Bottari grew up in and around the Village of Ardsley, a village of approximately forty three hundred in southern Westchester County. Exh. 1 at ¶5; Exh. 4 at p.32 ll.20-21. He has, for the last seven years, made his home at 10

Springwood Drive in Ardsley with his wife, Michelle, and their children, Olivia and Paul.  Id. at ¶6; Exh. 3 at p.4 l.11 - p.5 l.12; Exh. 4 at p.5 ll.1-11; Exh. 5 at p.5 l.11 - p.6 l.12.

Mr. Bottari served in the United States Marine Corp for four years and was honorably discharged in 1988.  Exh. 3 at p.38 ll.13-19.  He is a graduate of Brooklyn Law School and served as an Assistant District Attorney for Kings County from 1998-2003.  Exh. 3 at p.5 l.13 - p.6 l.25; Exh. 4 at p.5 l.19 - p.6 l.22.  In 2004, he opened his law practice with offices in White Plains.  Exh. 1 at ¶6; Exh. 3 at p.6. ll.5-16; Exh. 5 at p.7 ll.4-22.

Defendants' Statement  ¶2

He parked near an entrance to a closed CVS Pharmacy with the rear of his SUV closest to the building. (Exhibit C, p.21).

Plaintiff's Response to Defendants' Statement  ¶2

Plaintiff objects to the word "near" as a conclusion.

Mr. Bottari parked at the north end of the parking lot and was between ten and twenty feet from the CVS doors.  Exh. 3 at p.8 l.19 - p.9 l.2; Exh. 4 at p.10 ll.13-16 and p.16 ll.18-24; Exh. 7: Photograph.

He was alone and listened to music.  Exh. 3 at p. 9 ll.3-12; Exh. 5 at p.19 ll.6-18.

Defendants' Statement  ¶3

He exited the vehicle and the opened the rear hatch door. (Exhibit C, p.23).

Plaintiff's Response to Defendants' Statement  ¶3

At around 12:20 a.m., he got out of the SUV and went to the back to tidy up the rear compartment. Exh. 3 at p. 9-11; Exh. 4 at p.15 ll.10-14.

Defendants' Statement  ¶4

He saw a police patrol car drive past the otherwise vacant shopping center. (Exhibit C, p.23).

Plaintiff's Response to Defendants' Statement  ¶4

At around this time, Officer Stevenson was on routine patrol on Sawmill River Road driving southbound when he saw Mr. Bottari's auto and plaintiff outside and at the back.  Exh. 6: Transcript of Defendant Michael Stevenson's February 21, 2007 Testimony in People of the State of New York v. Andrew Bottari at p.9 ll.5-11 and at p.28 ll.2-12.

Officer Stevenson drove to the south entrance of the lot, turned in and proceeded back towards plaintiff, who had shut the trunk and was walking towards the front of the SUV and in the general direction of Stevenson's patrol car. Exh. 4 at p.11 ll.1-5; Exh. 5 at p.23 l.2 - p.24 l.12; Exh. 6 at p.28 l.8 - p.29 l.17 and at p.39 ll.18-24.

Defendants' Statement  ¶5

He began walking towards the front of his vehicle, and Police Officer Stevenson returned in the patrol car about a minute later. (Exhibit C, p.23-5).

Plaintiff's Response to Defendants' Statement  ¶5

See Response to Defendants' Statement 4.

Defendants' Statement  ¶6

Plaintiff had been out of his SUV for 30-60 seconds before Officer Stevenson arrived. (Exhibit C, p.26).

Plaintiff's Response to Defendants' Statement  ¶6

Admitted.

Defendants' Statement ¶7

Plaintiff was still out of his vehicle when he had his first contact with Officer Stevenson, who was in his patrol car. (Exhibit C, p. 26).

Plaintiff's Response to Defendants' Statement ¶7

Admitted. Stevenson drove up to plaintiff and asked him what he was doing there. Mr. Bottari replied that "I am not doing anything." Exh. 5 at p.28 ll.4-21; Exh. 3 at p.18 ll.12-17; Exh. 4 at p.11 ll.7-9.

Defendants' Statement ¶8

Officer Stevenson investigated.

Q: What were the first words he said to you?

A: He asked what I was doing there?

Q: Did you respond?

A: Yes

Q: What did you say?

A: I said "I am not doing anything."

Q: What did he say then?

A: He said "What are you doing here?" I responded, "I am not doing anything. I am just here." Then he asked me again and I said "I am listening to music."

(Exhibit C, p.28).

Plaintiff's Response to Defendants' Statement ¶8

Officer Stevenson's tone was accusatory, Exh. 3 at p.12 ll.5-6; Exh. 4 at p.11 l.6, very stern, Exh. 3 at p.12 ll.17-18, and interrogative. Exh. 5 at p.31 ll.20-24. Plaintiff maintained a quiet and neutral tone, a "monotone." Exh. 5 at p.31 l.25-p.32 l.5.

Stevenson asked again and Bottari said "I am not doing anything. I'm just, you know, here, listening to music." Exh. 3 at p.12 ll.9-11; Exh. 5 at p.28 ll.19-21; see Exh. 5 at p.19 l.15 ("I was listening to music.")

Defendant Stevenson then questioned plaintiff about his name, address etc. Plaintiff asked in the same quiet tone "why do you need to know my name?" Exh. 3 at p.12 ll.12-23; Exh. 4 at p.11 ll.9-10.

Bottari told the Officer that he did not have to answer the questions and that he had done nothing wrong. Exh. 3 at p.16 ll.19-25. Mr. Bottari said that he was going home. Exh. 4 at p.11; Exh. 5 at p.30 ll.24-25.

Bottari then went to get back into his car. Exh. 3 at p.16 l.25 - p.17 l.3.

Stevenson said to plaintiff that "you're not leaving," and pulled his patrol car forward and blocked plaintiff's auto. Exh. 3 at p.17 ll.4-7; Exh. 4 at p. 11 ll.13-16; Exh. 5 at p.31 ll.14-15 and at p.34 ll.3-22.

Defendants' Statement ¶9

Plaintiff saw Officer Stevenson using the radio in his vehicle. (Exhibit C, p.29-30).

Plaintiff's Response to Defendants' Statement ¶9

Defendant Stevenson then called for a second patrol car. Exh. 3 at p.17 ll.6-7; Exh. 4 at p.11 l.16; Exh. 6 at p.41 ll.20-23.

Defendants' Statement ¶10

Plaintiff told Officer Stevenson that he was leaving.

Q: What else was said while he was still in his vehicle?

A: I said "I am going to go home. I am going to leave."

(Exhibit C, p.30).

Q: And did he respond?

A: Yes

Q: What did he say?

A: He said, "No, you are not."

(Exhibit C, p.31).

Plaintiff's Response to Defendants' Statement ¶10

See Response to Defendants' Statement 8.

Defendants' Statement ¶11

Plaintiff opened his car door. (Exhibit C, p.34-5).

Plaintiff's Response to Defendants' Statement ¶11

Admitted.

Defendants' Statement ¶12

Officer Stevenson placed his police vehicle to block plaintiff's vehicle.

Q: What else was said before he got out of his vehicle?

A: I said, "What are you doing?"

Q: Did he respond?

A: No. He just pulled up his car up in front of my car blocking my vehicle in.

(Exhibit C, P.31).

Plaintiff's Response to Defendants' Statement ¶12

See Response to Defendants' Statement 8.

Defendants' Statement ¶13

Officer Stevenson exited his vehicle, and 1 to 2 minutes later Sergeant Fischer arrived. (Exhibit C, p.32-3).

Plaintiff's Response to Defendants' Statement ¶13

  Fisher arrived about one or two minutes later. Exh. 5 at p.32 l.13-17. Both defendants got out of their cars. Exh. 3 at p.14 ll6-7; Exh. 4 at p.11 l.17.

Defendants' Statement ¶14

  As the police officers stood to his left and right, Officer Stevenson spoke:

Q: What did Officer Stevenson say?

A: He said, "Get your hands out of your pockets."

Q: What did you say?

A: I asked him why.

Q: What did he say?

A: He responded, "For safety reasons."

Q: Did you take your hands out of your pockets?

A: Not immediately.

(Exhibit C, p.40).

Plaintiff's Response to Defendants' Statement ¶14

  After a brief conversation with each other, Fisher and Stevenson stepped apart, forming what plaintiff describes as "a V shape" with plaintiff at the point and Fisher to his right and Officer Stevenson to his left. Exh. 3 at p.14 ll.6-11; Exh. 4 at p.11 ll.19-22; Exh. 5 at p.36 l.16 - p.38 l.3.

  Mr. Bottari was asked for the first time to take his hands from his pockets. He asked why and Stevenson said for safety. Exh. 3 at p.14 ll.12-15; Exh. 4 at p.11 ll.21-25; Exh. 5 at p.40 ll.11-19.

Defendants' Statement ¶15

  Plaintiff did not take his hands out of his pockets and continued to talk.

Q: What did you say?

A: I said, "I have my phone in one pocket and my wallet in the other." (Exhibit C, p.41).

Plaintiff's Response to Defendants' Statement ¶15

Mr. Bottari announced that he had a wallet in one hand and a phone in the other.  Exh. 3 at p.14 ll.15-20; Exh. 4 at p.11 l.25 - p.12 l.3;  Exh. 5 at p.41 ll.4-5.  He removed his hands from his pockets and lifted them slowly sideways to about shoulder height. Exh. 3 at p.14 l.18 - p.15 l.3; Exh. 4 at p.12 ll.3-7 ("I understand police officers don't know who I am on the street, so I pulled my hands out very slowly.")

Defendants' Statement ¶16

The police did not ask plaintiff to take anything out of his pockets. (Exhibit C, P.41).

Plaintiff's Response to Defendants' Statement ¶16

The police did not forbid Mr. Bottari from taking anything out of his pockets.

Defendants' Statement ¶17

Even so, plaintiff took his hands out, holding his cell phone and wallet at shoulder height with elbows bent, facing the officers. (Exhibit C, p.41,43).

Plaintiff's Response to Defendants' Statement ¶17

See Response to Defendants' Statement ¶15.

Defendants' Statement ¶18

Less then 5 seconds later the police officers grabbed him by the arms and shoulders. (Exhibit C, p.42-5).

<u>Plaintiff's Response to Defendants' Statement ¶18</u>

The two defendants quickly approached and grabbed Mr. Bottari from both sides by his shoulders and arms, spun plaintiff around and threw him to the ground. Exh. 3 at p.19 ll.6-7, at p.19 ll.17-25 and at p.20 ll.24-25; Exh. 4 at p.12 ll.10-12; Exh. 5 at p.44 l.20 - p.45 l.23.

As the defendants approached him, Mr. Bottari asked the officers what they were doing and, as he was going down to the ground, said that he was a former prosecutor, an attorney. Exh. 3 at p.17 ll.11-22; Exh. 4 at p.12 ll.12-14; Exh. 5 at p.51 ll.6-20.

<u>Defendants' Statement ¶19</u>

A second or two later, all of them were on the ground. (Exhibit C, p.45).

<u>Plaintiff's Response to Defendants' Statement ¶19</u>

See Response to Defendants' Statement ¶18.

Mr. Bottari's face and left eye struck the asphalt. Exh. 3 at p.17 ll.23-25. <u>See</u> Exh. 8.

One of the defendants was twisting plaintiff's arm. Exh. 3 at p.20 ll.12-13.

Plaintiff said that the officers could have his arms, that he was not resisting. Exh. 3 at p.20 ll.13-15; Exh. 4 at p.12 ll.14-16; Exh. 5 at p.49 ll.14-24.

He felt blows on the back of his head from an elbow or fist. Exh. 3 at p.21 ll.12-13; Exh. 4 at p.12 ll.17-20; Exh. 5 at p.49 ll.23-24.

He was handcuffed. Exh. 3 at p.20 l.16; Exh. 5 at p.48 ll.16-24.

Plaintiff lifted his head and felt something drip down his face. Exh. 4 at p.12 ll.20–21.

He looked at the asphalt, saw blood, and grew angry. Exh. 4 at p. 12 ll.21-24. He told the officers that they screwed up. Exh. 4 at p.12 l.25 - p.13 l.4; Exh. 5 at p.50 ll.17-22.

An ambulance was called.  Exh. 3 at p.22 ll.22-23; Exh. 4 at p.13 l.7; Exh. 5 at p.52 ll.8-10; Exh. 6 at p.23 ll.5-25.

Bottari remained on the ground for five to ten minutes.  Exh. 5 at p.47 ll.15-17.  He felt pain to his knee, shoulder, and above his left eye.  Id. at p.47 ll.22-23.  He was bleeding from above his left eye. Id. at p.48 ll.13-15.

An Ardsley Volunteer Ambulance Corp ambulance arrived.  Mr. Bottari knew both ambulance personnel; Mr Clear and Dr. Strict.  Mr. Clear had been plaintiff's ninth grade biology teacher.  Charles Strict is a local dentist whose children played sports with plaintiff's children.  Exh. 3 at p.7 ll.7-13; Exh. 4 at p.13 ll.7-18; Exh. 5 at p.53 l.2 - p.54 l.21.

Mr. Bottari, upset, expressed his disbelief to Strict and Clear. They attended to the head wound and said they were going to take him to Dobbs Ferry Hospital.  Exh. 4 at p.18 l.24 - p.19 l.12.; Exh. 5 at p.55 ll.4-15.  Defendant Stevenson was in the ambulance with them.  Exh. 4 at p.19 ll.15-20.

Plaintiff was taken to Dobbs Ferry Community Hospital, see Exh. 9 (medical records), where he remained handcuffed and under guard.  Exh. 4 at p.18 ll.17-19 and at p.20 ll.16-19.  He had pain in his shoulder, head and leg. Exh. 4 at p.21 ll.13-23.

He was examined and treated.  He received sutures to close the laceration above his left eye.  Exh. 3 at p.23 ll.12-15;  Exh. 4 at p.14 ll.5-6; see Exh. 8 (photographs) and 9 (medical records).

Defendants' Statement  ¶20

Plaintiff did not inform the police officers that he was an attorney and former Assistant District Attorney until the fell on the ground. (Exhibit C, p.51).

Plaintiff's Response to Defendants' Statement  ¶20

See Response to Defendants' Statement  ¶18.

<u>Defendants' Statement ¶21</u>

Plaintiff was charged with Disorderly Conducted Resisting Arrest and Obstruction of Governmental Administration, and the matter was dismissed due to the District Attorney's Failure to timely prosecute. (See Exhibit D).

<u>Plaintiff's Response to Defendants' Statement ¶21</u>

After the hospital, plaintiff was taken to Ardsley Police Station where he was photographed, fingerprinted, charged with obstruction of governmental administration, resisting arrest and disorderly conduct and then released. Exh. 3 at p.28 ll.14-19; Exh. 4 at p.14 ll.12-18, at p.23 ll.3-23; <u>see</u> Exh. 12: Misdemeanor Information signed by Michael Stevenson dated March 3, 2005; <u>see also</u> Exh. 10: March 3, 2005 Ardsley Police Department Case Report Work Sheet prepared by Michael Stevenson and Exh 11: March 3, 2005 Ardsley Police Department Supplemental Complaint Report prepared by David Fisher.

Mr. Bottari retained an attorney to defend against the assertedly false charges and went to court five or more occasions. Exh. 4 at p.26 l.13 ll.13-19; Exh. 5 at p.74 ll.8-18.

In February 2006, the charges were dismissed on speedy trial grounds. Exh. 5 at p.85 ll.18-23; Exh. 13: Decision and Order Dismissing All Charges Pursuant to Criminal Procedure Law §30.30; Exh 14: Certificate of Disposition.

Remaining due is payment of approximately twenty thousand dollars for the criminal defense. Exh. 15: December 1, 2005 Time Sheet/Invoice regarding Criminal Defense in <u>People v. Bottari</u>; Exh. 5 at p.75 ll.3-10.

Dated: March 28, 2008
      Brooklyn, New York

                                                        Matthew Flamm **MF1309**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ANDREW BOTTARI,

                          Plaintiff,                    CERTIFICATE OF SERVICE
                                                          07-CV-8192 (CLB)

      - against -

DAVID FISHER and MICHAEL STEVENSON,
employees of the Village of Ardsley Police
Department,

                          Defendants.

----------------------------------------------------------------x

STATE OF NEW YORK    )
                                 : SS. :
COUNTY OF KINGS     )

      MATTHEW FLAMM, declares the following under penalty of perjury pursuant to 28 U.S.C. §1746:

      That on March 28, 2008, I served the annexed PLAINTIFF'S STATEMENT PURSUANT TO LOCAL RULE 56.1 IN RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DECLARATION REGARDING EXHIBITS AND EXHIBITS upon John Walsh, attorney for defendants, at Hodges Walsh & Slater, 55 Church Street, Suite 211, White Plains, New York 10601, that being the address within the State designated for that purpose, by facsimile transmission without exhibits and by Federal Express overnight delivery.

                                                                         Matthew Flamm